IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-1054

DEREDIZ TORRES

    Plaintiff;

v.

CHERRY CREEK SCHOOL DISTRICT NO. 5,

    Defendant.

## COMPLAINT WITH JURY DEMAND

Plaintiff, Derediz Torres, by and through counsel of Kishinevsky & Raykin, Attorneys at Law, respectfully allege for their Complaint and Jury Demand as follows:

### JURISDICTION AND VENUE

1. This action arises under the laws of the United States and is brought pursuant to Section 504 of the Rehabilitation Act of 1973 -- 29 U.S.C. § 794.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  All events alleged in this Complaint occurred within the State of Colorado.

### PARTIES

3. At all times relevant to this suit, Plaintiff was a resident of the State of Colorado.

4. Defendant Cherry Creek School District is a school district organized under the laws of the state of Colorado and located in Pitkin County, Colorado.

### GENERAL ALLEGATIONS

5. Plaintiff was a minor student in the Cherry Creek School District ("District" or "Defendant"). Plaintiff was a minor student at Cherokee Trail High School ("Cherokee Trail" or "School") during the time period relevant to Plaintiff's claims.

6. Plaintiff was a student with a disability.

7. Plaintiff's disabilities include depression, major depressive disorder, and generalized anxiety disorder.

8. Plaintiff's disabilities substantially impact major life functions, including his ability to regulate his emotions and making and maintaining friendships and relationships with his peers.

9. On January 14, 2016, Plaintiff's mother, Ms. Torres, wrote Mr. Nick Jasurda ("Mr. Jasurda"), the School Counselor, telling him, "I am sorry for bothering you again. I am going to need your help. My son came home in tears today explaining to me that everyone hates him and that he has no friends. He is having a (tough) time after moving here from Florida and I am sure he misses his friends. The change has been drastice for him … he is very depressed coming home everyday. Can you please speak to him? Can you advise him? I done my part, but I am sure coming from someone else might help. Please keep me posted. I am extremely worried about him."

10. On January 15, Mr. Jasurda wrote to Ms. Torres to encourage Plaintiff to come to the counseling office on his own. This ignores the typical conduct of adolescents who are in crisis. As a counselor, Mr. Jasurda should have known that such teens are extremely reluctant to seek aid on their own, and that instead educators and counselors must make a concerted effort to reach out.

11. On October 16, 2016, the School received concerns about Plaintiff from two of his friends.  The School contacted the Arapahoe Sheriff's Department to perform a welfare check on Plaintiff.

12. Plaintiff's disabilities also began affecting his academic performance in 2016.  For the 2015-2016 school year, Plaintiff posted a GPA of 3.363, receiving primarily Bs and As, with the exception of a C- in Biology Honors.  In the first semester of the 2016-2017 school year, Plaintiff's grades declined.  Plaintiff's GPA for the first semester of the 2016-2017 school year declined to 2.484 and in addition to two Cs in Spanish 4 Honors and Geometry, Plaintiff received two Ds in Chemistry Honors and English 2 Honors.

13. On April 24, 2017, Ms. Torres contacted the School and informed School officials that Plaintiff had deliberately walked into traffic.  School officials interviewed Plaintiff, and he acknowledged feeling suicidal and deliberately walked into traffic as a result.  Plaintiff also reported not sleeping well.  Plaintiff was taken to Colorado Crisis Services clinic.

14. A suicide risk inventory performed on Plaintiff came back high risk.

15. On April 28, School officials referred Plaintiff to the Second Wind Fund, a local child suicide prevention organization.

16. By April 24, 2017 the School and District knew or should have known that Plaintiff was a child with a disability and failed to evaluate Plaintiff for a 504 plan or provide Plaintiff with reasonable accommodations to accommodate his disabilities.

17. Despite the fact that by April 24, 2017 the School was aware that Plaintiff had previously had a history of struggling which included School officials calling the Arapahoe Sheriff's Department to perform a welfare check as well as a semester of academic decline, the

3

District failed to evaluate Plaintiff for a 504 plan or provide Plaintiff reasonable accommodations.

18. By April 24, 2017 Plaintiff was also in the middle of the second consecutive semester of declining grades, and despite this, the District still did not initiate an evaluation for a 504 plan or provide Plaintiff with reasonable accommodations for his disabilities.

19. The District's failure to provide Plaintiff with reasonable accommodations denied Plaintiff equal access to the District's educational programs.

20. Because the School and District failed to provide Plaintiff reasonable accommodations, Plaintiff's academic performance continued to decline, and Plaintiff's mental and emotional health issues continued to worsen.

21. On May 2, Ms. Torres signed a HIPAA release authorizing School officials to confer with therapists from Second Wind.

22. Plaintiff's grades continued to decline for the second semester of the 2016-2017 school year. Plaintiff's GPA declined to a 2.348.

23. In addition to receiving a C- in Spanish 4 Honors and a D in Geometry, Plaintiff failed English 2 Honors with an F grade for the semester.

24. Despite Plaintiff's continued decline in grades for a second consecutive semester, the District failed to evaluate Plaintiff for a 504 plan or provide Plaintiff reasonable accommodations.

25. Because of the District's failure to provide Plaintiff with reasonable accommodations, Plaintiff's academic performance continued to decline into the fall semester of the 2017-2018 school year.

26. Plaintiff's mental and emotional health continued to worsen in the fall semester of the 2017-2018 school year.

27. On September 14, Ms. Torres contacted Mr. Jasurda regarding concerns she was having with Plaintiff. Ms. Torres expressed concern that Plaintiff was doing drugs, and she wanted Mr. Jasurda to check in with Plaintiff to see how he was doing. She specifically told Mr. Jasurda about her son, "He needs help and at this point I am out of options."

28. On September 18, Mr. Jasurda wrote back to Ms. Torres and stated that Plaintiff "did express to me that he feels disengaged when he goes home and spends his family time in his room. He also talked about how he has a negative outlook on things regardless of the situation."

29. On September 19, the School learned that Ms. Torres had to take Plaintiff to Children's Hospital for a mental health evaluation. Plaintiff was out of school for several days that week while he was hospitalized.

30. On September 23, Ms. Torres informed Mr. Jasurda that Plaintiff was being discharged from the hospital. Mr. Jasurda encouraged Ms. Torres to contact Dr. Nicholas Liguori ("Dr. Liguori"), the School psychologist.

31. Even following Plaintiff's hospitalization and the concerns raised by Ms. Torres, the School and District still failed to initiate an evaluation for Plaintiff for a 504 plan and still failed to provide Plaintiff reasonable accommodations for his disabilities.

32. On October 11, Ms. Torres informed several School officials that Plaintiff was in a "fragile" state of mind, and she requested a 504 plan for him.

33. Despite Ms. Torres's expressed concerns about her son's emotional and mental health, School officials informed Ms. Torres that the School could not hold a 504 meeting that quickly.

34. A 504 meeting was not held, Plaintiff was not evaluated for a 504 plan, and no 504 plan was developed or implemented for Plaintiff.

35. On November 10, Plaintiff made a joke about a school shooting. Later that day, Plaintiff called his mother and indicated he was going to kill himself. Plaintiff was suspended for five days that day, and the School began the threat assessment process.

36. On November 12, Ms. Torres informed the School that Plaintiff was hospitalized again after his suspension. Plaintiff's medication was increased.

37. On November 13, the School formally requested an expulsion hearing in order to expel Plaintiff.

38. It was not until November 17, 2017 that School officials finally obtained Ms. Torres's consent to evaluate Plaintiff for special education and related services.

39. A special education evaluation was conducted, and it was determined that Plaintiff was a child with a disability.

40. The Evaluation Report found that Plaintiff had difficulty regulating his emotions and experienced significant symptoms associated with anxiety and depression.

41. A psychological report, conducted along with Plaintiff's special education evaluation, found that Plaintiff had reported being bullied his freshmen year in high school, suffered a drop in grades during his sophomore year, stated that he did not have friends and avoided a lot of people, reported that he was depressed and felt sad all of the time.

42. Teacher participation in Plaintiff's psychological report demonstrates that School officials had knowledge of Plaintiff's disabilities and social and emotional health struggles but failed to provide Plaintiff with reasonable accommodations for his disabilities.  A teacher who completed a BASC-3 as part of Plaintiff's psychological found Plaintiff to be at risk across numerous areas of evaluation, including anxiety, withdrawal, adaptability, social skills, and functional communication.  A teacher also noted that Plaintiff often has panic attacks.

43. Despite not having finalized results of Plaintiff's special education evaluation, it was sufficiently clear to District and School officials that Plaintiff was a child with a disability and needed reasonable accommodations in order to equally access the District's educational programs, that the District paused its planned expulsion of Plaintiff and scheduled a manifestation determination review to determine if Plaintiff's November 2017 behavior was a manifestation of his disabilities.

44. In December 2017, a Determination of Eligibility was completed, and it was formally determined that Plaintiff was a child with a disability and a formal Individualized Education Plan ("IEP") was developed for Plaintiff.

45. Plaintiff did not continue as a student in the District for the Spring 2018 semester. Plaintiff transferred to another school district where he received services and accommodations pursuant to his IEP.

46. After receiving accommodations and special education services pursuant to an IEP, Plaintiff's performance improved, and Plaintiff graduated from high school.

47. Plaintiff filed a Due Process Complaint against the District alleging that the District violated its child find duty and denied Plaintiff a free appropriate public education

("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and an administrative hearing was held. The hearing officer found for the District in a decision dated December 18, 2019.

## CLAIMS

**FIRST CLAIM FOR RELIEF – Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 7894 – Against Cherry Creek School District No. 5**

48. Plaintiff realleges all other paragraphs as if fully set forth herein.

49. Plaintiff is a student with a disability as defined by Section 504.

50. Plaintiff was diagnosed with depression and generalized anxiety disorder.

51. Plaintiff's disabilities impaired major life functions. The effects of Plaintiff's disabilities include but are not limited to impairing his ability to make and maintain friendships and relationships with his peers and impairing his ability to regulate his emotions.

52. The District was aware of these physical and mental/emotional symptoms by no later than April 24, 2017.

53. The District failed to provide Plaintiff with reasonable accommodations that would allow him equal access to the District's educational programs.

54. By failing to identify Plaintiff as a student with a disability and failing to evaluate him for a 504-plan and by failing to develop a 504-plan that provided Plaintiff with reasonable accommodations, the District discriminated against Plaintiff on the basis of disability by denying him equal access to the District's educational programs.

55. The District's failure to provide Plaintiff with reasonable accommodations caused Plaintiff's academic performance to decline, including receiving a failing grade, and caused Plaintiff's social and emotional health issues to continue to worsen.

56. The District's violation of Section 504 caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and economic damages and attorney fees and costs in this action.

## REQUEST FOR RELIEF

57. Plaintiff requests that the Court enter judgment in his favor and against Defendant as follows:

    a. Awarding the Plaintiff's special damages for out-of-pocket expenses, expenses for medical and psychological treatment, and educational expenses in amounts to be established at trial;

    b. Awarding the Plaintiff general damages for emotional distress in an amount to be established at trial;

    c. Punitive damages, pursuant to 42 U.S.C. § 1981, 2000(e), in the maximum amount permitted by law;

    d. Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

    e. Awarding Plaintiff pre-judgment interest; and

    f. Awarding the Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

### *PLAINTIFF REQUESTS A JURY ON ALL ISSUES SO TRIABLE*

*s/ Igor Raykin*
Igor Raykin, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-767-1846
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff

*s/ Michael Nolt*
Michael Nolt, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-588-9713
E-mail: michael@coloradolawteam.com
Attorney for Plaintiff